| | | |
|---|---|---|
| MELISSA GIFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONSPIRIT HEALTH and | ) | JURY DEMAND |
| MOUNTAIN MANAGEMENT | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Melissa Gifford ("Plaintiff" or "Ms. Gifford") asserts for her Complaint against Defendants CommonSpirit Health and Mountain Management Services, Inc. as follows:

## I.      INTRODUCTION

1.      Ms. Gifford was a strong Practice Manager for Defendants, who successfully took over medical practice management responsibilities following the retirement of a long-tenured predecessor.

2.      Throughout her two-year employment, she received repeated positive feedback and praise for her performance, as detailed below.

3.      In June 2025, Ms. Gifford informed Defendants that she had a serious health condition requiring surgery and medical leave, and she also communicated disability-related limitations affecting certain physical aspects of her job.

4.      Rather than engaging in the interactive process and accommodating Ms. Gifford through a finite period of medical leave, Defendants began building a paper trail to justify her discharge, including placing Ms. Gifford on a subjective "performance improvement plan" ("PIP") shortly after she notified Defendants of her need for surgery and medical leave.

1

5. In a one-on-one meeting, Ms. Gifford's direct supervisor admitted that the alleged performance issues in the PIP were "minor" and acknowledged that Ms. Gifford was a "strong manager."

6. Within approximately ten days after Ms. Gifford formally requested medical leave, Defendants terminated her employment, before her leave could begin and before the PIP's stated evaluation period could even run.

7. Instead of accommodating Ms. Gifford's disability and honoring her right to protected medical leave, Defendants terminated her employment because of her disability, because she requested accommodation, and because she requested and/or attempted to take FMLA leave.

8. Therefore, Ms. Gifford brings this action for disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and for interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

## II. JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction over Plaintiff's ADA and FMLA claims pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States.

10. This Court has personal jurisdiction over Defendants because, at all relevant times, they conducted business in this District, including operating and managing medical practices and employing Plaintiff within this District.

11. Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

2

### III.  ADMINISTRATIVE PREREQUISITES

12.     Ms. Gifford has exhausted administrative remedies and complied with all statutory prerequisites to her ADA claims. Ms. Gifford timely filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) regarding the facts underlying this action against Defendants.

13.     The EEOC issued Dismissal and Notice of Rights letters on January 20, 2026, copies of which were served on Plaintiff and Defendants.

### IV.     PARTIES

14.     Ms. Gifford is a United States citizen and resident of Rocky Face, Whitfield County, Georgia. At all times relevant to this action, she worked for Defendants in this District.

15.     Defendant CommonSpirit Health is a Colorado nonprofit corporation with its principal office located at 444 W. Lake Street, Suite 2500, Chicago, IL 60606-0097.  It may be served at its registered agent, C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

16.     Defendant Mountain Management Services, Inc. is a Tennessee nonprofit corporation with its principal office located at 5600 Brainerd Road, Suite 500, Chattanooga, TN 37411-5371.  It may be served at its registered agent, Memorial Health Care System, Inc., 2525 Desales Avenue, Chattanooga, TN 37404-1161.

17.     At all relevant times, Defendants have continuously conducted business in Tennessee, including employing Plaintiff in Tennessee, where she was employed at CHI Memorial Urology Associates in Chattanooga, Tennessee.

18.     At all relevant times, Defendants employed 50 or more employees within 75 miles of Plaintiff's worksite.

3

19. At all relevant times, Defendants were each an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), and the FMLA, 29 U.S.C. § 2611(4).

20. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2). Plaintiff worked more than 1,250 hours and was employed for over 12 months at the time of her request for medical leave.

21. At all relevant times, Defendants operated as joint employers and/or an integrated enterprise, each of which had the authority to, and did, determine the terms and conditions of Ms. Gifford's employment.

22. CommonSpirit Health is a national hospital chain operating approximately 138 hospitals in 24 states, including Tennessee, with approximately 160,000 team members.[1] Mountain Management Services, Inc. is a physician practice management company that is part of CommonSpirit Health and provides human resources support and staffing for physician practices, including CHI Memorial Urology Associates. Consistent with this relationship, Defendants shared and/or allocated control over the terms and conditions of Ms. Gifford's employment, including hiring, supervision, discipline, leave administration, and termination decisions, and therefore each Defendant is liable as an employer and/or joint employer under the ADA and FMLA.

## V. FACTS

### A. Ms. Gifford's Employment and Performance

23. On or about May 1, 2023, Defendants hired Ms. Gifford as a Practice Manager at CHI Memorial Urology Associates in Chattanooga, Tennessee.

24. Ms. Gifford has over 20 years of medical practice management experience.

25. Ms. Gifford successfully assumed management responsibilities after the retirement

---

[1] https://www.commonspirit.careers/ (last visited February 16, 2026).

4

of a long-tenured practice manager and continued operating the practice's day-to-day operations.

26. Ms. Gifford's job responsibilities included, among other things, employee scheduling, managing patient issues, interacting with physicians and hospital management, administrative work, and day-to-day business operations.

27. Throughout her employment, Ms. Gifford performed her job well and was recognized as a competent manager.

28. For example, in September 2023, Defendants' Senior HR Business Partner, John Steele, told Ms. Gifford that she "came into a huge mess" but that she was "doing a fantastic job!"

29. In August 2024, Defendants issued Ms. Gifford an annual performance review with an Overall Rating Recommendation of "Significantly Exceeds Expectations."

30. In or about October 2024, Ms. Gifford's direct supervisor, Mia Elizondo, wrote Ms. Gifford a thank you card, stating, in part, "The passion you have for caring for others is evident in your leadership. Despite the many challenges you find a way to push through & be excellent. Keep up the great work!"

31. In fact, even after Ms. Gifford's termination (discussed more below), one of Defendants' physicians wrote her a letter of recommendation, praising her "skill and talent" in her position.

**B. Ms. Gifford Communicates Her Medical Limitations**

32. Ms. Gifford has bilateral osteoarthritis of both knees, which substantially limits one or more of her major life activities, including but not limited to walking, kneeling, and bending.

33. Throughout Ms. Gifford's employment, her condition was open, obvious, and known to her coworkers and supervisors. She openly talked about her severe knee pain and related mobility issues. Near the end of her employment, she wore a knee brace on her left knee, visibly

over her clothing.

34.    In approximately May 2025, Ms. Gifford talked to her supervisor, Ms. Elizondo, about the fact that her doctor told her that she needed knee surgery in the near future to address her condition.

35.    Ms. Gifford also informed Ms. Elizondo that her knee condition limited her ability to kneel to file documents and perform other floor-level physical tasks, communicating specific job-related functional limitations arising from her disability.

### C.  Defendants Place Ms. Gifford on a PIP

36.    On or about June 6, 2025, Defendants placed Ms. Gifford on a Performance Improvement Plan ("PIP"). The PIP was issued soon after Ms. Gifford's May 2025 disclosure of her knee condition and anticipated surgery, and was not preceded by any prior written counseling, formal verbal warning, or documented performance concerns.

37.    Ms. Gifford was blindsided by the issuance of the PIP.

38.    The PIP set forth inherently subjective and vague criteria, including alleged concerns about "tone," "culture," and interpersonal issues.

39.    Among the PIP's stated concerns was an allegation that Ms. Gifford was insufficiently present at the practice's clinical locations and was "leading behind a desk." Ms. Elizondo subsequently acknowledged to Ms. Gifford that her knee condition affected her ability to be physically present on the floor, demonstrating that the PIP's presence criterion was directly linked to Ms. Gifford's disability-related mobility limitations.

40.    The PIP's stated evaluation period was expected to run through August 7, 2025, with the next review meeting on July 7, 2025.

41.    On or about June 11, 2025, in an in-person meeting, Ms. Elizondo told Ms. Gifford

6

that the concerns stated in the PIP were "minor things" and that Ms. Gifford was a "strong manager."

42.     Ms. Elizondo also acknowledged that the PIP's criteria were subjective and offered to speak with HR about making the PIP objectives more measurable.

### D.  Ms. Gifford Requests Medical Leave

43.     On or about June 9, 2025, Ms. Gifford notified Defendants in writing that she had filed for leave so she could have surgery on her left knee and that her leave would begin in July.

44.     Ms. Gifford also provided Defendants with a signed Authorization for Release of Health-Related Information, so they could confirm her need for medical leave.

45.     During an in-person meeting in mid-June, Ms. Gifford and Ms. Elizondo discussed Ms. Gifford's knee condition, physical limitations, and need for surgery, medical leave, and accommodation.

46.     During this meeting, Ms. Gifford informed Ms. Elizondo that her disability prevented her from certain physical actions, such as standing for extended periods. Ms. Gifford stated directly that her disability would not allow her to continue performing those physical aspects of the job without addressing her condition. In response, Ms. Elizondo acknowledged Ms. Gifford's physical limitations and stated that Defendants would need to make accommodations.

47.     Despite this notification, Defendants did not propose or implement any accommodation, did not schedule a follow-up discussion, and did not engage in a good-faith interactive process to identify a workable accommodation.

48.     Instead, Ms. Gifford was terminated eight days later.

49.     Defendants were aware of Ms. Gifford's limitations and discussed accommodations, including medical leave.

7

50. Ms. Gifford's leave request was a request for protected medical leave under the FMLA.

51. Defendants failed to engage in a meaningful interactive process and failed to provide reasonable accommodations.

### E. Defendants Terminate Ms. Gifford Soon After Her Leave Request

52. On June 19, 2025, approximately ten days after Ms. Gifford's leave request, Defendants terminated her employment.

53. Defendants claimed that Ms. Gifford was terminated due to "Unsuccessful Work Improvement Plan."

54. Defendants terminated Ms. Gifford nine business days into her two-month-long PIP, before she had the 30-day PIP progress meeting, and before her medical leave could begin.

55. The termination was not the result of any legitimate, nondiscriminatory reason. Rather, Defendants terminated Ms. Gifford because of her disability, because she requested accommodations, and/or because she requested and/or attempted to take protected medical leave.

56. After Ms. Gifford's termination, one of the physicians who worked closely with her wrote a glowing letter of recommendation stating that Ms. Gifford "more than exhibited the skills and talent required for her position" and that he could recommend her "without any reservations, whatsoever."

57. Upon information and belief, Defendants have not terminated non-disabled Practice Managers for alleged PIP failures before the completion of the PIP period and/or before their first PIP progress review.

58. Defendants' stated reasons for termination were false, inconsistent, insufficient, and/or not honestly believed.

59. As a direct result of Defendants' discriminatory and retaliatory conduct, Ms. Gifford has suffered economic hardship and severe effects on her physical, mental, and emotional well-being.

## VI. CAUSES OF ACTION

60. Ms. Gifford incorporates in this Section VI, including in the specific counts below, the facts set out in the foregoing paragraphs.

### COUNT I: Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12112(a)

61. The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability in regard to discharge and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

62. The ADA defines "disability" to include having a physical or mental impairment that substantially limits one or more major life activities or major bodily functions; having a "record of" such an impairment; and being "regarded as" having an actual or perceived physical or mental impairment that is not transitory and minor. § 12102(1)-(3); 29 C.F.R. § 1630.2(g).

63. Ms. Gifford's knee condition was a physical impairment that substantially limited one or more major life activities or major bodily functions, she had a record of having such an impairment, and/or Defendants regarded it as such, including because Defendants knew she had physical limitations and requested finite leave and accommodation.

64. Ms. Gifford was a qualified individual within the meaning of the ADA. Her position was primarily administrative and managerial in nature, and she could perform its essential functions with or without reasonable accommodation.

65. Defendants took adverse employment actions against Ms. Gifford by, *inter alia*, placing her on a PIP and terminating her employment.

9

66. Upon information and belief, Defendants have not terminated non-disabled Practice Managers for alleged PIP failures before the completion of the PIP period and/or before their first PIP progress review.

67. Defendants took these actions because of Ms. Gifford's disability and/or because she requested accommodation for such disability.

68. Defendants' stated reason for termination (failure to complete PIP) was a pretext for unlawful discrimination.

69. Defendants' conduct violated the ADA.

70. Defendants are liable for the actions of their managerial employees and agents, all of whom were acting within the scope of their employment and/or agency.

71. As a direct and proximate result of Defendants' intentional, willful, and/or reckless discriminatory conduct, which was undertaken with malice and/or reckless indifference to Ms. Gifford's federally protected rights, Ms. Gifford has suffered damages including lost wages, benefits, emotional distress, inconvenience, and other compensatory damages, and she is entitled to punitive damages, attorneys' fees, and costs.

**COUNT II: Failure to Accommodate / Failure to Engage in the Interactive Process in Violation of the ADA, 42 U.S.C. § 12112(b)(5)**

72. The ADA requires covered employers to provide reasonable accommodations to qualified individuals with disabilities, absent undue hardship. 42 U.S.C. § 12112(b)(5).

73. The ADA also requires employers to engage in an interactive process to identify reasonable accommodations.

74. Ms. Gifford notified Defendants of her disability, disability-related limitations and her need for accommodation, including medical leave for surgery and modifications to physical job requirements.

75. Defendants failed to meaningfully engage in the interactive process to identify and implement reasonable accommodations.

76. Instead of accommodating Ms. Gifford, Defendants took adverse employment actions against Ms. Gifford by, *inter alia*, placing her on a PIP and terminating her employment.

77. Defendants terminated Ms. Gifford because of her disability and/or because she requested accommodation for such disability.

78. Defendants' stated reason for termination (failure to complete PIP) was a pretext for unlawful discrimination.

79. Defendants' conduct violated the ADA.

80. Defendants are liable for the actions of their managerial employees and agents, all of whom were acting within the scope of their employment and/or agency.

81. As a direct and proximate result of Defendants' intentional, willful, and/or reckless conduct, which was undertaken with malice and/or reckless indifference to Ms. Gifford's federally protected rights, Ms. Gifford has suffered damages including lost wages, benefits, emotional distress, inconvenience, and other compensatory damages, and she is entitled to punitive damages, attorneys' fees, and costs.

### COUNT III: Retaliation in Violation of the ADA, 42 U.S.C. § 12203(a)

82. The ADA prohibits retaliation against an employee because she requested a reasonable accommodation or otherwise opposed disability discrimination. 42 U.S.C. § 12203(a).

83. Ms. Gifford engaged in protected activity by requesting accommodation and by requesting and/or attempting to take medical leave for her disability-related limitations.

84. Defendants took adverse employment actions against Ms. Gifford by, *inter alia*, placing her on a PIP and terminating her employment.

11

85.     Defendants' adverse actions were causally connected to Ms. Gifford's protected activity.

86.     Defendants terminated Ms. Gifford because of her disability and/or because she requested accommodation for such disability.

87.     Defendants' stated reason for termination (failure to successfully complete PIP) was a pretext for unlawful discrimination.

88.     The temporal proximity between Plaintiff's protected activity and Defendants' adverse actions supports an inference of retaliation.

89.     Defendants' conduct violated the ADA.

90.     Defendants are liable for the actions of their managerial employees and agents, all of whom were acting within the scope of their employment and/or agency.

91.     As a direct and proximate result of Defendants' intentional, willful, and/or reckless retaliatory conduct, which was undertaken with malice and/or reckless indifference to Ms. Gifford's federally protected rights, Ms. Gifford has suffered damages including lost wages, benefits, emotional distress, inconvenience, and other compensatory damages, and she is entitled to punitive damages, attorneys' fees, and costs.

**COUNT IV: Interference with Rights Under the FMLA, 29 U.S.C. § 2615(a)**

92.     The FMLA requires employers with 50 or more employees within a 75-mile radius of an employee's worksite to offer twelve weeks of unpaid medical leave to employees with a serious health condition who have worked at least 1,250 hours for the employer in the past 12 months and been employed at least one year. 29 U.S.C. § 2611(2), (4); § 2612(a)(1).

93.     The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempt to exercise any right under the FMLA. 29 U.S.C. § 2615(a)(1).

12

94. Ms. Gifford was an eligible employee within the meaning of the FMLA. § 2611(2).

95. Ms. Gifford's knee condition was a serious health condition because it was an illness, injury, impairment, and/or physical condition that involved inpatient care in a hospital and/or continuing treatment by a health care provider. § 2611(11).

96. Ms. Gifford gave Defendants notice of her need for medical leave due to a serious health condition as soon as was practicable before her medical treatment. 29 C.F.R. § 825.302.

97. Defendants interfered with, restrained, and denied Ms. Gifford's exercise or attempt to exercise of her rights under the FMLA by denying the FMLA leave she was entitled to and/or terminating her employment before her leave could begin.

98. Defendants' conduct violated the FMLA.

99. As a direct and proximate result of Defendants' interference, Ms. Gifford has suffered damages including lost wages and benefits, and she is entitled to liquidated damages, attorneys' fees, and costs.

## COUNT V: Retaliation in Violation of the FMLA, 29 U.S.C. § 2615(a)

100. The FMLA prohibits an employer from discharging or otherwise discriminating against an employee for opposing practices made unlawful by the FMLA or for exercising rights under the FMLA. 29 U.S.C. § 2615(a).

101. Ms. Gifford engaged in protected activity by requesting and/or attempting to take FMLA-covered medical leave.

102. Defendants discharged and discriminated against Ms. Gifford for her protected activity by interfering with and denying her FMLA rights and/or terminating her employment.

103. Defendants' adverse action was causally connected to Ms. Gifford's protected

13

activity.

104.    Defendants' conduct violated the FMLA.

105.    As a direct and proximate result of Defendants' retaliation, Ms. Gifford has suffered damages including lost wages and benefits, and she is entitled to liquidated damages, attorneys' fees, and costs.

## VII. PRAYER FOR RELIEF

106.    WHEREFORE, Ms. Gifford prays for the following relief:

A. That she be awarded damages in the amount of any wages, salary, employment benefits, or other compensation, including, but not limited to back pay and front pay, plus pre- and post-judgment interest;

B. Lost future earnings;

C. Compensatory damages, including damages for emotional distress and for medical expenses, if any;

D. Punitive damages;

E. Liquidated damages;

F. Reasonable attorneys' fees;

G. The costs and expenses of this action;

H. An offset to mitigate the tax burden of any lump sum award;

I. Injunctive relief barring Defendants from undertaking such discriminatory practices against other employees, mandating disability discrimination prevention training, and taking other such injunctive action as the Court finds appropriate; and

J. Such other legal and equitable relief to which Ms. Gifford may be entitled.

K. Plaintiff demands a jury to try this cause.

14

Respectfully submitted,

*s/ Curt M. Masker*
Caraline Rickard Masker, TN Bar No. 034414
Curt M. Masker, TN Bar No. 037594
RICKARD MASKER, PLC
810 Dominican Drive, Suite 314
Nashville, Tennessee 37228
Telephone: (615) 270-2098
Facsimile: (615) 821-0632
caraline@maskerfirm.com
curt@maskerfirm.com

*Counsel for Plaintiff Melissa Gifford*

15